**SLATTENGREN & SONS PROPERTIES, LLC,**
Respondent,

v.

**RTS RIVER BLUFF, LLC,**
et al., Defendants,

**The RiverBank, a Banking Corporation Under the Laws of the United States of America, Appellant.**

No. A11–322.

Court of Appeals of Minnesota.

Oct. 11, 2011.

Review Granted Dec. 13, 2011.

Clark A. Joslin, Joslin & Moore Law Offices, P.A., Cambridge, MN, for respondent.

Katherine M. Melander, Steven R. Little, Brian W. Varland, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; SHUMAKER, Judge; and CONNOLLY, Judge.

## OPINION

WRIGHT, Judge.

In this dispute as to the priority between two purchase-money mortgages, appellant argues that the district court erred by concluding that appellant's mortgage is junior to respondent's mortgage when appellant's mortgage was recorded first, respondent's predecessors-in-interest had notice of appellant's mortgage, and respondent's predecessors-in-interest failed to ensure that their mortgage was recorded first. We reverse and remand.

## FACTS

On December 12, 2003, RTS River Bluff, LLC, borrowed $2,300,000 from appellant The RiverBank to purchase and develop three tracts of real property in Chisago County as a residential community called St. Croix River Bluffs. To secure repayment of the loan, RTS River Bluff granted

RiverBank a mortgage on the development.

On December 22, 2003, RTS River Bluff purchased one of the three tracts of real property that would be used in the development from Linn and Helen Slattengren and received a warranty deed. RTS River Bluff paid $348,857 and the Slattengrens accepted a mortgage on the property to secure the $210,823 balance of the purchase price. The Slattengrens subsequently assigned the mortgage to respondent Slattengren & Sons Properties, LLC.

Burnet Title, which handled the closings for the RiverBank mortgage and the property sale and Slattengren mortgage, recorded both mortgages in Chisago County at 4:15 p.m. on December 31, 2003. The RiverBank mortgage was recorded as document number A–420873; the Slattengren mortgage was recorded as document number A–420875.

RTS River Bluff defaulted on both mortgages. RiverBank foreclosed its mortgage against the unsold lots in the St. Croix River Bluffs development and was the highest bidder at a sheriff's sale on the foreclosed property in August 2008. The redemption period expired in August 2009 without a redemption. Slattengren & Sons sought to foreclose the Slattengren mortgage and commenced this action in June 2009, asserting that its mortgage is senior to any other interest in the property covered by the Slattengren mortgage.

At the bench trial that followed, RiverBank asserted that its mortgage is a purchase-money mortgage that was prior and superior to the Slattengren mortgage because (1) it was recorded first and (2) when the Slattengrens accepted the mortgage from RTS River Bluff, they had notice that RiverBank held a mortgage on the same property and that the RiverBank mortgage would have priority.

The district court concluded that the RiverBank mortgage and the Slattengren mortgage are both valid purchase-money mortgages. But the district court determined that the Slattengren mortgage is prior and superior to the RiverBank mortgage because the Slattengren mortgage was a vendor's purchase-money mortgage and because the Slattengrens did not have notice of the RiverBank mortgage or its intended priority. The district court ordered entry of judgment in favor of Slattengren & Sons and ordered a foreclosure sale with proceeds to be applied first to satisfy the judgment in favor of Slattengren & Sons.

RiverBank moved for amended findings of fact, conclusions of law, an order for judgment and judgment, or a new trial. The district court amended its order to correct typographical errors and a legal description of the property but otherwise denied RiverBank's motion. This appeal followed.

## ISSUE

Did the district court err by concluding that the Slattengren mortgage is prior and superior to the RiverBank mortgage?

## ANALYSIS

 We review a district court's findings of fact in a bench trial for clear error, Minn. R. Civ. P. 52.01; *Untiedt v. Grand Labs., Inc.*, 552 N.W.2d 571, 574 (Minn. App.1996), *review denied* (Minn. Oct. 15, 1996), and the district court's legal conclusions de novo, *Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn.App.2002), *review denied* (Minn. June 26, 2002).

 A purchase-money mortgage is a mortgage for which "any portion of the money secured by the mortgage is used for the payment of the purchase price of the real property or any portion of it."

Minn.Stat. § 507.03 (2010); *Gores v. Schultz*, 777 N.W.2d 522, 528 (Minn.App. 2009), *review denied* (Minn. Mar. 16, 2010); *accord Wells Fargo Home Mortg., Inc. v. Newton*, 646 N.W.2d 888, 893 (Minn.App. 2002) (citing *O'Halloran v. Marriage*, 167 Minn. 443, 445, 209 N.W. 271, 272 (1926)) (defining purchase-money mortgage as a mortgage that is given to secure unpaid purchase money), *review denied* (Minn. Sept. 25, 2002). A purchase-money mortgage need not be executed on the same day as the deed of sale, but the mortgage and deed "must be 'part[ ] of one continuous transaction, and so intended to be, so that the two instruments should be given contemporaneous operation in order to promote the intent of the parties.'" *Gores*, 777 N.W.2d at 528 (quoting *Stewart v. Smith*, 36 Minn. 82, 84, 30 N.W. 430, 432 (1886)). A purchase-money mortgage takes priority over other liens created by the mortgagor through the equitable doctrine of instantaneous seisin, "under which the title becomes encumbered with the mortgage the moment it passes from seller to purchaser." *Kloster–Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 65, 226 N.W.2d 603, 608 (1975).

A purchase-money mortgage may be granted to a vendor of real property or to a third party who advances the purchase money to be paid to the vendor. *Stewart*, 36 Minn. at 83, 30 N.W. at 431; *see also Olson v. Olson*, 203 Minn. 199, 202, 280 N.W. 640, 641 (1938) ("When a third party furnishes a part of the purchase price and takes a mortgage therefor from the vendee, the mortgage may be given effect as a purchase-money mortgage."), *modified on other grounds*, 203 Minn. 199, 281 N.W. 367 (1938). A third party who takes a purchase-money mortgage acquires the same equities that a vendor acquires by taking a purchase-mon-

ey mortgage. *Marin v. Knox*, 117 Minn. 428, 431, 136 N.W. 15, 16 (1912).

Although a third-party lender's purchase-money mortgage cannot attach until the mortgagor obtains the underlying property interest, the third-party lender's purchase-money mortgage instantaneously attaches when title is transferred, just as the vendor's purchase-money mortgage instantaneously attaches when title is transferred. *See Kloster–Madsen, Inc.*, 303 Minn. at 65, 226 N.W.2d at 608 (observing that under equitable doctrine of instantaneous seisin, "title becomes encumbered with the [purchase-money] mortgage the moment it passes from seller to purchaser"); *New Prague Lumber & Readi–Mix Co. v. Bastyr*, 263 Minn. 249, 255–56, 117 N.W.2d 7, 11 (1962) (same). Therefore, a vendor's purchase-money mortgage and a third-party lender's purchase-money mortgage taken as part of the same transaction arise simultaneously and have the same equities. Applying these principles here, title to the property at issue here became simultaneously encumbered with both the RiverBank mortgage and the Slattengren mortgage at the moment when title to the property transferred from the Slattengrens to RTS River Bluff.

Relying on *Schoch v. Birdsall*, 48 Minn. 441, 51 N.W. 382 (1892), the district court concluded that a vendor's purchase-money mortgage is given priority over a third-party lender's purchase-money mortgage taken in the same transaction if the vendor's purchase-money mortgage is taken in good faith and without notice of the third-party lender's mortgage. In *Schoch*, as here, a third-party lender's mortgage and a vendor's purchase-money mortgage were taken on the same real property. 48 Minn. at 443, 51 N.W. at 382. The Minnesota Supreme Court determined that the vendor's purchase-money mortgage had priority over the third-party lender's mort-

gage because the vendor's purchase-money mortgage seised instantaneously and the vendor lacked notice of the third-party lender's interest in the property. *Id.* Here, the district court determined that, under this principle, the Slattengrens have priority because they are vendors who had no notice of the RiverBank purchase-money mortgage. But the *Schoch* court did not identify or treat the third-party lender's mortgage as a purchase-money mortgage that attaches at the moment of deed delivery. *See id.* Because *Schoch* does not expressly address two "purchase-money mortgages" in which instantaneous seisin occurs simultaneously, we conclude that *Schoch* is not dispositive here as it does not establish that a vendor's purchase-money mortgage has priority as against a third-party lender's purchase-money mortgage arising from the same transaction.

We observe that the district court's analysis of *Schoch* is consistent with the Restatement (Third) of Property: Mortgages, § 7.2(c) (1997), which provides:

> A purchase money mortgage given to a vendor of real estate, in the absence of a contrary intent of the parties to it and subject to the operation of the recording acts, has priority over a purchase money mortgage on that real estate given to a person who is not its vendor.

This principle has been adopted by courts of other jurisdictions. *See, e.g., ALH Holding Co. v. Bank of Telluride,* 18 P.3d 742, 747 (Colo.2000); *Giragosian v. Clement,* 199 A.D.2d 656, 604 N.Y.S.2d 983, 984–85 (1993). But Minnesota has not adopted the Restatement (Third) of Property: Mortgages, § 7.2(c), and this principle is inconsistent with Minnesota law, which does not recognize a distinction between a vendor's purchase-money mort-

gage and a third-party lender's purchase-money mortgage on the same property that arise as part of the same transaction. *See Marin,* 117 Minn. at 431, 136 N.W. at 16 (observing that third party who obtains purchase-money mortgage acquires same equities that vendor acquires by taking purchase-money mortgage). Accordingly, the district court's determination that the Slattengrens have priority by virtue of their status as vendors is contrary to Minnesota law.

How to determine priority between a vendor's purchase-money mortgage and a third-party lender's purchase-money mortgage arising as part of the same transaction is an issue of first impression in Minnesota. The Minnesota Supreme Court has acknowledged, without deciding, that a vendor's purchase-money mortgage and a third-party lender's purchase-money mortgage would attach simultaneously and the order in which they recorded their interests would overcome their otherwise equal standing. *Olson,* 203 Minn. at 201, 280 N.W. at 640 (observing that "[f]irst of record is ordinarily first of right"). This proposition is consistent with the Minnesota Recording Act, which provides:

> Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded.

Minn.Stat. § 507.34 (2010).[1] Under the Minnesota Recording Act, mortgage priority established by the order of recording may be defeated by notice of a superior

---

1. "A mortgage is a conveyance of real estate for purposes of Minn.Stat. § 507.34." *Mid-* *Country Bank v. Krueger,* 782 N.W.2d 238, 244 (Minn.2010).

mortgage. *Wash. Mut. Bank, F.A. v. Elfelt,* 756 N.W.2d 501, 506 (Minn.App.2008), *review denied* (Minn. Dec. 16, 2008); *see also Citizens State Bank v. Raven Trading Partners, Inc.,* 786 N.W.2d 274, 278 (Minn. 2010) ((explaining that a purchaser in good faith, or bona fide purchaser, is one "who gives consideration in good faith without actual, implied, or constructive notice of inconsistent outstanding rights of others") (quotation omitted)). The Minnesota Recording Act does not decide priority here because neither party can be said to be "subsequent" to the other, as both mortgages arose from the same transaction and were effective at the same moment. But consistent with the Minnesota Recording Act, which establishes priority in part based on order of recording, and *Olson,* which contemplates prioritization based on recording order in these circumstances, we hold that the order in which simultaneously arising purchase-money mortgages are recorded establishes the priority of the mortgages.

Here, the lower document number of the RiverBank mortgage establishes that it was recorded first. *See Fender v. Appel,* 187 Minn. 281, 284, 245 N.W. 148, 149 (1932) (observing that mortgages presumptively take priority in the order in which they are numbered); *Wash. Mut. Bank,* 756 N.W.2d at 506 (observing that order of priority provided by the record is presumed to be certain); *In re Ocwen Fin. Servs., Inc.,* 649 N.W.2d 854, 857 (Minn. App.2002) (holding that Torrens property registration document numbers "are conclusive evidence of the order in which the mortgages were filed"), *review denied* (Minn. Nov. 19, 2002). Although River-Bank's mortgage priority under the Minnesota Recording Act could be defeated if RiverBank had notice of a superior mortgage, RiverBank did not have notice of an inconsistent, outstanding interest when it acquired its purchase-money mortgage because its purchase-money mortgage arose simultaneously with the Slattengrens' purchase-money mortgage. Thus, the order of recording establishes that the RiverBank mortgage is superior to the Slattengren mortgage.

The district court also concluded that the Slattengrens lacked notice of the RiverBank mortgage. But neither our legal research, nor that of the parties, identifies a basis in Minnesota law for examining whether the Slattengrens, who recorded second and were not subsequent purchasers, had notice of the RiverBank mortgage in circumstances such as these. Moreover, even if the Slattengrens' knowledge of the RiverBank mortgage were considered, the record establishes that the Slattengrens had implied or inquiry notice of the existence of another mortgage with potentially higher priority. At the closing on the property sale to RTS River Bluff, Helen Slattengren signed a United States Department of Housing and Urban Development settlement statement on behalf of herself and her husband that identifies the Slattengren mortgage as "2nd Mortgage (seller carry back) $200,000." This settlement statement placed the Slattengrens on implied, or inquiry, notice of a potential inconsistent right. *See Comstock & Davis, Inc. v. G.D.S. & Assocs.,* 481 N.W.2d 82, 85 (Minn.App.1992) (stating that implied notice occurs when one has "actual knowledge of facts which would put one on further inquiry" (alteration omitted) (quotation omitted)); *Wash. Mut. Bank,* 756 N.W.2d at 508 n. 5 (observing that implied notice charges a person with notice of everything the person could have learned by inquiring).

In sum, the district court erred by concluding that the Slattengren mortgage is superior to the RiverBank mortgage.

285

## DECISION

Minnesota law does not grant a vendor's purchase-money mortgage priority as against a third-party lender's purchase-money mortgage arising from the same transaction. In such circumstances, the purchase-money mortgages arise simultaneously and the order in which the purchase-money mortgages are recorded determines the priority of those mortgages. Because it was recorded first, appellant's mortgage is superior to respondent's mortgage. Accordingly, we reverse the district court's judgment and remand for further proceedings not inconsistent with this opinion.

**Reversed and remanded.**